# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Women's Life Care Center, et al., | Case No. 24-cv-04250 (NEB/SGE) |
| Plaintiffs, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS** |
| Keith Ellison, et al., | |
| Defendants. | |

Plaintiffs bring the present lawsuit as part of an ongoing effort to restrict access to abortion throughout the United States.  Plaintiffs include a national organization of self-styled pregnancy help centers ("PHCs"),[1] two PHCs and their directors, and three women who allegedly obtained abortions in Minnesota in 2020, 2021, and 2023 and later regretted their decisions.  They sue several Minnesota state officials in their official capacities, including Attorney General Keith Ellison, Governor Tim Walz, Minnesota Department of Human Services ("DHS") Temporary Commissioner Shireen Gandhi, Minnesota Department of Health ("MDH") Commissioner Brooke Cunningham, Minnesota Board of Medical Practice ("Medical Board") President Pamela Gigi Chawla, Minnesota Board of Nursing President ("Nursing Board") Jessica Miehe, and Minnesota Board of Pharmacy ("Pharmacy Board") President Ronda Chakolis-Hassan (collectively the "State

---

[1] PHCs (also known as "crisis pregnancy centers") are organizations whose primary mission is to counsel pregnant persons to continue their pregnancies.

Defendants").    Plaintiffs seek compensatory and punitive damages, declaratory, and injunctive relief.

Plaintiffs attempt a new angle on old arguments regarding the politically-fraught question of abortions, styling themselves not as parties seeking to limit women's rights, but as champions of women's rights.    They attack Minnesota's statutory scheme, which, consistent with the Minnesota Constitution, recognizes that "every individual who becomes pregnant has a fundamental right to continue the pregnancy and give birth, or obtain an abortion, and to make autonomous decisions about how to exercise this fundamental right."    Minn. Stat. § 145.409, subd. 3.    They argue that Minnesota's recognition of a pregnant person's fundamental right to make autonomous decisions about whether to keep a pregnancy, and its decision to entirely remove itself from the decision-making process, in fact violates all women's federal constitutional rights because pregnant people are allegedly not capable of making such a decision alone and, instead, require state and court intervention before such a decision can be deemed valid.    In the alternative, they argue that such a decision should not be authorized at all.

They put forth several theories—each of which strain credulity—while repeatedly asserting their benevolent goal to allegedly advance the rights of women.    First, they allege that the regime violates fundamental rights guaranteed by the Fourteenth Amendment because the regime allows abortions to take place and a pregnancy to end without State intervention to ensure the pregnant person's decision was sound.    Second, they allege that Minnesota's statutory scheme violates pregnant people's Fourteenth Amendment rights to

2

equal protection because Minnesota's statutes governing termination of parental rights, adoptions, and minor abortions provide for court hearings, and the reproductive rights statutes do not, and because Minnesota's statute governing the murder of an unborn child does not apply to medical providers who provide abortions. Third, they allege that Minnesota's statutory scheme violates a pregnant person's right to procedural due process under the Fourteenth Amendment, again because no court hearing is provided before a voluntary abortion. Finally, they argue that statements by State Defendants critical of PHCs violate their rights to free speech.

State Defendants reject outright Plaintiffs' attempt to cast themselves as women's rights advocates rather than politically-motivated parties seeking to end women's reproductive rights. Plaintiffs' complaint fails to acknowledge the most basic premise of women's rights—that a woman has the capacity to think and make decisions for herself. Instead, Plaintiffs repeatedly assert that women are incapable of making decisions about their bodies and their lives without intervention from the government. True champions of women's rights recognize that a woman is fully capable of understanding her own needs and making her own decisions and does not need the government to tell her what to do with her body or her life. Minnesota's reproductive rights statute embodies these principles.

But the Court need not reaffirm here that women are entitled to make decisions without government intrusion, because it lacks subject matter jurisdiction. Plaintiffs lack standing. In addition, because the Eleventh Amendment bars Plaintiffs' claims, because Plaintiffs have failed to sufficiently allege any claim for relief under 42 U.S.C. § 1983

("Section 1983"), because the Governor is entitled to legislative immunity, because Plaintiffs' complaint fails to state a claim on the merits, because some of Plaintiffs' claims are moot, and because their complaint violates the pleading standards of the Federal Rules of Civil Procedure, Plaintiffs also fail to state a claim for relief.  The State Defendants, therefore, request that the Court dismiss all of Plaintiffs' claims against them with prejudice.

## RELEVANT COMPLAINT FACTS[2]

At 443 paragraphs spanning 241 pages, Plaintiffs' pleading is neither short nor plain.  Even so, it contains very little relevant factual material.  Here, the State Defendants recount only those allegations that are germane to the claims against them.[3]

## I.    ABOUT THE PLAINTIFFS

There are eight plaintiffs.  Women's Life Care Center ("WLCC") and Dakota Hope Clinic ("Dakota Hope") are PHCs that seek to thwart "unwanted abortions" by providing free prenatal education, counseling, and other services, as well as post-abortion support. (Compl. ¶¶ 21, 26.)  WLCC is in Minnesota.  (*Id.* at 21.)  Dakota Hope is in North Dakota. (*Id.* at 26.)  Dawn A. Schreifels, MD, is WLCC's medical director and supervises all

---

[2] These facts are drawn from the Complaint (Compl.; ECF No. 1) and public information of which the Court may take judicial notice at this stage of the litigation.  The State Defendants do not admit Plaintiffs' allegations but assume all well-pleaded facts are true for purposes of Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

[3] The Complaint cites numerous declarations, which were not filed or served with the Complaint and, therefore, should not be considered part of the Complaint.

medical services provided to its patients. (*Id.* at ¶28.) David Billings, MD, performs the same role at Dakota Hope. (*Id.* at ¶27.) WLCC, Dakota Hope, Schreifels, and Billings purport to represent themselves, all their respective current and future patients, and every woman who wants but is prevented from obtaining their services. (*Id.* at ¶¶21, 26-28.)

The National Institute of Family and Life Advocates ("NIFLA") is an association comprised of approximately 1,765 PHCs, about 40 of which are in Minnesota, including WLCC. (Compl. ¶¶21, 22, 26.) NIFLA helps PHCs become licensed medical clinics, and all its members provide services akin to WLCC and Dakota Hope. (*Id.* at ¶22.) NIFLA purports to represent the interests of itself, each of its members (including WLCC and Dakota Hope), all its members' current and future patients, and every woman who wants but is prevented from obtaining its members' services. (*Id.*)

Clara Munger and K.P.S. are Minnesotans who had abortions in 2021 and 2020, respectively, at Minnesota clinics operated by Planned Parenthood Minnesota, North Dakota, South Dakota, a subsidiary of Planned Parenthood North Central States ("Planned Parenthood"). (Compl. ¶¶23, 25.) Alexandra Johnson is a North Dakota resident who had an abortion in 2023 at Red River Women's Clinic ("Red River") in Moorhead, Minnesota. (*Id.* at ¶24.)

Munger claims her boyfriend pressured her into having an abortion and that Planned Parenthood provided her no counseling, information, or "true informed consent procedure[.]" (*Id.* at ¶287.) Had she been told that abortion is "murder punishable by life imprisonment," and that by consenting she gained "immunity from prosecution," Munger

alleges she would have elected not to go forward with the procedure.  (*Id.*)

Per the Complaint, K.P.S.[4] was also allegedly pressured to have an abortion, by her family and the man who impregnated her.  (Compl. ¶286.)  Like Munger, K.P.S. alleges that Planned Parenthood did not provide her counseling on or assistance with abortion alternatives.  (*Id.*)  And Johnson, too, was allegedly coerced by her boyfriend to have an abortion.  (*Id.* at ¶ 285.)  Red River allegedly "made her take both abortion drugs ensuring she could not get progesterone treatment" to counteract the drugs' effects. (*Id.*)

## II.    THE STATE DEFENDANTS

There are seven State Defendants.  Each is sued in their official-capacity only.

### A.    The Governor

Governor Walz is the elected head of Minnesota's executive branch.  He appoints commissioners of executive agencies, fills vacancies that occur between elections, issues executive orders, signs or vetoes legislation, issues proclamations, and takes care that the laws are faithfully executed.  Minn. Const. Art. V § 3; Minn. Stat. ch. 4.  Plaintiffs included Governor Walz as a defendant because he signed abortion-related legislation and issued an executive order in 2022 that protects abortion providers.  (*Id.* at ¶¶30, 73.); (Jacot Dec., Ex. 1).  Governor Walz also allegedly appeared at a press conference in 2024 with PPNCS's CEO and Medical Director, touting the legislation and his alleged "partnership" with PPNCS.  (Compl. at ¶¶73-81.)

---

[4] To date, K.P.S. has not been identified to the Court or the State Defendants.

B.    **The Attorney General**

Attorney General Ellison is a constitutional officer elected by the people of Minnesota.  Minn. Const. Art. V.  He sits on the Board of Pardons, appears on behalf of the State in court proceedings in which the State is directly interested, provides legal representation to State agencies, enforces consumer protection and antitrust laws, regulates charities, and advocates for the public in utilities matters.  Minn. Stat. ch. 8.  Plaintiffs include Attorney General Ellison as a defendant because he allegedly "is responsible for the enforcement and legal defense of [Minnesota's] abortion statutes[.]" (*Id.* at ¶29.)  He has also allegedly "failed to litigate the protection of [pregnant people's] rights" and allegedly discouraged pregnant people from obtaining assistance from PHCs and progesterone treatment in an August 2022 "Consumer Alert." (*Id.* at ¶¶29, 86-87, 90.)

C.    **DHS Commissioner**

Temporary Commissioner Gandhi is the top official at DHS, Minnesota's state agency tasked with providing economic assistance, welfare services, services for the elderly, services for people with disabilities, and services for other people in Minnesota who do not have the resources to meet their basic needs.  *See* Minn. Stat. § 256.01.  Plaintiffs sued DHS's Commissioner because she allegedly "is responsible for overseeing the implementation of all legal processes which effectuate the involuntary termination of a mother's parental rights" and "administers the MinnesotaCare Program and other government funded programs under which government monies are used to pay the abortion businesses." (*Id.* at ¶31.)  Involuntary terminations of parental rights, however, are

7

typically managed by county human service agencies or agents of the Department of
Children, Youth, and Families and not by DHS. *See* Minn. Stat. § 260C.141.

### D.   MDH Commissioner

Commissioner Cunningham is the top official at MDH, the State's public health
agency which monitors and manages disease outbreaks, ensures safe drinking water and
food, provides birth and death certificates, administers chronic disease prevention
programs, inspects nursing homes and hospitals, advises on environmental health risks,
and promotes health equity. *See* Minn. Stat. ch. 144. Plaintiffs sued her because she
allegedly "is responsible for [Minnesota] policies to promote the health and well-being of
Minnesota residents," and she views abortion as healthcare. (Compl. ¶35.) Commissioner
Cunningham's general duties are enumerated in Minn. Stat. § 144.05.

### E.   Medical Board President

Plaintiffs sued Medical Board President Chawla because she allegedly "is
responsible for the licensing and regulation of physicians" and has allegedly "fail[ed] to
sanction or otherwise regulate" physicians who perform abortions. (*Id.*) The Medical
Board has the primary purpose and obligation to protect the public from the unprofessional,
improper, incompetent, and unlawful practice of medicine and the practice of seven allied
health professions. Minn. Stat. §§ 147.001, subd. 2; 147.012, 147.02. The Medical Board,
like Minnesota's other health-related licensing boards, has a statutory duty to receive and
resolve complaints against regulated persons. Minn. Stat. § 214.103 (complaint resolution
procedures applicable to all health-related licensing boards). As President, Chawla has the

8

same authority as any other board member to vote on the Board's disciplinary matters or recommend a complaint for dismissal, as enumerated in the Minnesota Medical Practice Act and Minnesota Statutes chapter 214. Plaintiffs have not identified a complaint filed with the Board at issue in this case.

### F.    Nursing Board President

Plaintiffs sued Nursing Board President Miehe because she allegedly "is responsible for the licensing, regulation, and oversight of nurse practitioners and licensed nurses" and some nurse practitioners and licensed nurses provide abortions or assist with providing abortions. (Compl. at ¶37.) The Nursing Board has oversight of the licenses of registered nurses, licensed practical nurses, and advanced practice registered nurses who practice in Minnesota. Minn. Stat. § 148.211. The Board has authority to adopt rules related to education, examination, registration and licensing of nurses; license and register nurses; receive and investigate complaints; and impose discipline as appropriate. Minn. Stat. §§ 148.191, subd. 2, 148.262, 214.103. As President, Miehe has the same authority as any other board member to vote on the Board's disciplinary matters or recommend a complaint for dismissal, as enumerated in the Minnesota Nurse Practice Act and Minnesota Statutes chapter 214. Plaintiffs have not identified a complaint filed with the Board at issue in this case.

### G.    Pharmacy Board President

Plaintiffs sued Pharmacy Board President Chakolis-Hassan because she allegedly "is responsible for the licensing and regulation of pharmacists" and has allegedly failed to

ban licensed pharmacists from dispensing mifepristone and misoprostol, which induce abortion. (Compl. ¶ 38.)  The Pharmacy Board has authority to regulate the practice of pharmacy, regulate the manufacture and sale of drugs within Minnesota, enter and inspect places where drugs are dispensed or sold, examine and license pharmacists and drug distributors, register pharmacy technicians, receive and investigate complaints, take disciplinary action as appropriate, and adopt rules consistent with their authority.  Minn. Stat. §§ 151.06, 214.103.  As President, Chakolis-Hassan has the same authority as any other board member to vote on the Board's disciplinary matters or recommend a complaint for dismissal, as enumerated in the Minnesota Pharmacy Practice Act and Minnesota Statutes chapter 214.  Plaintiffs have not identified a complaint filed with the Board at issue in this case.

## III.  MINNESOTA'S ABORTION LAWS

Enacted in 2023, Minnesota's Protect Reproduction Options Act ("PRO Act") provides that "[e]very individual who becomes pregnant has a fundamental right to continue the pregnancy and give birth, or obtain an abortion, and to make autonomous decisions about how to exercise this fundamental right."  Minn. Stat. § 145.409, subd. 3(b).  Relatedly, the PRO Act guarantees a fundamental right to make autonomous decisions concerning one's "reproductive health care," which by definition includes maternity care, abortion care, and associated counseling.  *Id.* at subds. 2, 3(a).  The PRO Act codified what has long been the law: "the right of privacy under the Minnesota Constitution encompasses a woman's right to decide to terminate her pregnancy" free from unwarranted government

10

intrusion.  *Women of State of Minn. by Doe v. Gomez*, 542 N.W.2d 17, 27 (Minn. 1995).

The PRO Act was passed in the aftermath of a 2022 state-court judgment invalidating many of Minnesota's then-existing abortion laws as violating the state constitution.  (Compl. ¶70.); *see Doe v. State*, No. 62-CV-19-3868, 2022 WL 2662998 at *1 (Minn. Dist. Ct. July 11, 2022).  Among the laws deemed unconstitutional were statutes prescribing, among other things, judicial bypass procedures for minors, disclosure and reporting requirements, a 24-hour wait time, who could perform an abortion, and where an abortion could be performed.  (*Id.* at ¶¶59-70.)  Munger and K.P.S. had their abortions when these laws were still in effect. (*Id.* at ¶¶24, 69.)

During the 2023 session, the legislature repealed the majority of the laws the state court invalidated the year prior and enacted the PRO Act and other reproductive health care measures including Minn. Stat. § 629.02, which prohibits extradition of abortion patients and providers; Minn. Stat. § 548.252, which shields abortion patients and providers from civil suits and judgments, and Minn. Stat. § 604.415, which is designed to deter such suits. *See* 2023 Minn. Laws c. 4 (enacting Minn. Stat. § 145.409); 2023 Minn. Laws c. 31 (enacting Minn. Stat. §§ 548.252, 604.415, 629.02); 2023 Minn. Laws c. 70, art. 4, § 113 (repealing invalidated laws).  Plaintiffs allege that these statutes and the repealed invalidated legislation are unconstitutional.  (Compl. at ¶¶57, 71 Prayers for Relief (E)(1).)

## STANDARDS OF REVIEW

### I.    STANDARD OF REVIEW FOR LACK OF SUBJECT MATTER JURISDICTION.

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a case if it lacks subject matter jurisdiction over the claims.  Fed. R. Civ. P. 12(b)(1).  Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived.  *Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024).  Challenges to subject matter jurisdiction may be raised by defendants at any time and courts must consider them *sua sponte*.  *Id.*

### II.    STANDARD OF REVIEW FOR FAILURE TO STATE A CLAIM.

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all factual allegations and view them in the light most favorable to the plaintiff. *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 740 (8th Cir. 2002).  The Court need not accept as true, however, conclusory allegations or legal conclusions drawn by the pleader from the facts alleged.  *See Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). While a Court generally may not consider matters outside the pleadings, it may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.  *Roberson v. Dakota Boys and Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022).  The Court must grant a motion to

12

dismiss when the complaint does not allege "enough facts to state a claim for relief that is plausible on its face" rather than merely "conceivable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In addition, Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

## ARGUMENT

The Court should dismiss Plaintiffs' claims due to lack of subject matter jurisdiction because Plaintiffs lack standing. In the alternative, the Court should dismiss Plaintiffs' claims as failing to state a claim for relief because the Eleventh Amendment bars Plaintiffs' claims, Plaintiffs have not properly alleged a claim under Section 1983, the Governor has legislative immunity, Plaintiffs' claims fail on the merits, Plaintiffs' claims for declaratory relief regarding previously-repealed statutes are moot, and Plaintiffs have not complied with the pleading requirements of Fed. R. Civ. P. 8.

## I.    PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.

Plaintiffs' claims must be dismissed because they lack Article III standing. There is no principle "more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine

on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing.'" *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 379 (2024); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2023) (standing ensures Federal courts exercise "their proper function in a limited and separated government").

To demonstrate Article III standing, Plaintiffs bear the burden of showing they have (1) "suffered an injury in fact"; (2) the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff's injury must be "concrete", i.e. "real, and not abstract." *TransUnion*, 594 U.S. at 424. A plaintiff seeking prospective relief "must show [they are] likely to suffer future injury that will be remedied by the relief sought." *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir. 2006). "By requiring the plaintiff to show an injury in fact, Article III standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *Alliance*, 602 U.S. at 381.

The alleged injury must also be fairly "trace[able] to the challenged action of the defendant." *Lujan*, 504 U.S. 560. In other words, the plaintiff must demonstrate that the defendant's actions or inactions caused the injury or will likely cause injury. *See Alliance*, 602 U.S. at 382. Causation and redressability "are often flip sides of the same coin, . . .

14

[s]o the two key questions in most standing disputes are injury in fact and causation." *Id.* at 381-82.

### A.    The Individual Abortion Patient Plaintiffs Fail To Establish Causation.

Three of the individual plaintiffs, Clara Munger, Alexandra Johnson, and K.P.S., lack standing because any alleged harm was not caused by the State Defendants. Plaintiffs Munger, Johnson, and K.P.S. all received abortions in Minnesota, which they claim were coerced. (Compl. ¶¶ 23, 24, 25, 357.) But these abortions were not performed or even allegedly "coerced" by any State Defendants. Rather, Plaintiffs allege that their boyfriends and/or families coerced them into abortions. (Compl. ¶¶ 285-87.) Any alleged failure by the State Defendants to intervene in these private relationships to prevent the coercion is too attenuated to confer Article III standing. *Alliance*, 602 U.S. at 383. Therefore, the individual abortion patient plaintiffs' claims against the State Defendants should be dismissed for lack of standing.

### B.  Plaintiff PHCs Fail To Demonstrate Either Injury or Causation.

Plaintiff PHCs also lack standing. They assert organizational standing because their mission—to protect and advance the rights and interests of pregnant mothers to keep and raise their wanted children—is allegedly being impacted by Minnesota's laws protecting abortion access. (Comp. ¶¶ 360-62.)

Minnesota statutes, however, do not frustrate PHCs' mission in any way; they simply acknowledge that pregnant people have autonomy to make their own decisions about their pregnancies. Section 145.509 specifically provides "every individual who

becomes pregnant has a fundamental right to continue the pregnancy and give birth, or obtain an abortion, and to make autonomous decisions about how to exercise this fundamental right." (Subd. 3.) This autonomy implicitly includes the choice to visit PHCs if they so choose. Organizations that "seek to do no more than vindicate their own value preferences through the judicial process" do not have standing. *Sierra Club v. Morton*, 405 U.S. 727, 741 (1972).

Even assuming the Plaintiff PHCs have an injury-in-fact, that injury was not caused by the actions of any of the State Defendants. Plaintiffs allege that their purpose is frustrated because they are not able to convince all pregnant people to keep their pregnancies. (Compl. ¶¶86, 362.) This is because Plaintiffs do not have "legal power and authority" to stop third-parties from taking pregnant people to abortion providers where the pregnant people may obtain abortions. (*Id.*) These third parties who drive patients to clinics, talk to them about abortions, or otherwise assist them in going somewhere other than PHCs are independent actors not before this Court. Courts have consistently rejected such attenuated theories of standing that "depend[] on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562. And this Court should as well.

Plaintiffs specifically note a press conference by Attorney General Ellison, where he issued a "Consumer Alert" allegedly discouraging women from seeking services at PHCs. (Compl. ¶¶86-87, 372.) The Consumer Alert states that "many crisis pregnancy

16

centers claim to offer comprehensive healthcare, but their purpose is to prevent pregnant people from accessing that right—which sometimes they accomplish by misleading, misinforming, or deceiving people."[5]  (Jacot Dec. Ex. 2.)  The Consumer Alert further encourages pregnant people to "do their homework" prior to seeking healthcare.

Plaintiff PHCs and NIFLA allege that this Consumer Alert harmed their reputations, (Compl. ¶372), but neither were mentioned by name.  Nor have Plaintiffs set forth any facts demonstrating that their specific reputations were harmed or that anyone reported them to the consumer protection hotline provided by Attorney General Ellison.  Plaintiffs only make conclusory allegations that their reputations have been damaged (Compl. ¶372), which is not sufficient to demonstrate an injury-in-fact.  *See*, *e.g.*, *Miller v. James*, -- F. Supp. 3d --, 2024 WL 4333197, at *5 (N.D.N.Y. Sept. 27, 2024), *appeal docketed*, No. 24-2785 (2d Cir. Oct. 22, 2024) (finding that a press conference "where neither [PHC] was mentioned by name" is not sufficient to establish reputational harm for standing).

Finally, Plaintiff NIFLA asserts standing based on its member PHCs, including the Plaintiff PHCs.  Because the Plaintiff PHCs do not have standing, neither does Plaintiff NIFLA.  *Higgins Elec., Inc. v. O'Fallon Fire Prot. Dist.*, 813 F.3d 1124, 1128 (8th Cir. 2016).

---

[5] State Defendants note that several of Plaintiffs' allegations about the content of the alert, including, but not limited to, the claims that it discourages pregnant people from seeking and obtaining progesterone treatment, are wholly inaccurate. (*Compare* Compl. ¶¶86-87, *with* the Consumer Alert.)

17

### C.    The Physician Plaintiffs Lack Individual Standing.

Billings and Schreifels assert standing based on injury to themselves.  (Compl. ¶27 & 28.)   Billings  specifically  claims  injury  because  he  provides  medical  services  for pregnant patients and his personal mission aligns with Dakota Hope's mission, which is to discourage abortion.  (Compl. ¶27.)  Similarly, Schreifels alleges that her personal mission as a physician aligns with the PHC's mission that she works for, i.e. she opposes abortions.  (*Id.* at ¶28.)  Essentially, the Physician-Plaintiffs have a general grievance that abortion is legal in Minnesota. But no one is requiring them to provide abortions, nor could anyone require them to do so.  *Alliance*, 602 U.S. at 390 ("Federal law fully protects doctors against being required to provide abortions or other medical treatment against their consciences."). Plaintiff Physicians' general opposition to abortion is not sufficient to establish an injury-in-fact. *Id.* at 386.

Billings also alleges he has standing because he provides progesterone to patients after they have taken Mifepristone. (Compl. ¶27.) The Supreme Court squarely rejected a similar argument in *Alliance*. There the physicians were "pro-life, oppose[d] elective abortion, and ha[d] sincere legal, moral, ideological, and policy objections to mifepristone being prescribed and used *by others*." *Alliance*, 602 U.S. at 386 (emphasis in original).  The physicians argued that they had standing, in part, because they would have to treat patients that suffered from abortion complications.  *Id.* at 387.  The Supreme Court held that the causal connection was too attenuated and that the "the law has never permitted doctors to challenge  the  government's  loosening  of  general  public  safety  requirements  simply

because more individuals might then show up at emergency rooms or in doctors' offices with follow-on injuries." *Id.* at 391. Here too, the Plaintiff-Physicians do not have standing "simply because *others* are allowed to engage in certain activities" i.e. perform and receive abortions. *Id.* at 393.

### D.   PHCs, NIFLA, and Medical Providers Lack Third-Party Standing On Behalf of Current and Future Patients.

Finally, Plaintiff PHCs, NIFLA, Billings, and Schreifels also claim standing on behalf of their current and future patients.  Ordinarily, a plaintiff cannot bring claims for the benefit of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Third-party standing allows a plaintiff to litigate the interests of a third party where (i) the plaintiff has suffered an "injury in fact" in his or her own right, (ii) the plaintiff has a "close relation to the third party," and (iii) there is "some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).  For the reasons discussed above, neither the PHC Plaintiffs nor the Physician-Plaintiffs have established "injury in fact" in their own right.  Therefore, the Plaintiffs cannot assert third-party standing on behalf of current and future patients.  *See Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)

## II.   THE ELEVENTH AMENDMENT BARS PLAINTIFFS' CLAIMS AGAINST THE STATE DEFENDANTS.

Even if the Plaintiffs had properly pleaded standing, their claims are still completely barred.  The Eleventh Amendment to the United States Constitution provides each state with complete immunity from a suit in federal court by its own citizens or citizens of other

states.  *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2004); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  The Eleventh Amendment's bar applies with equal force to claims against state officials sued in their official capacities in federal court.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edelman*; 415 U.S. at 662-63.  This bar applies to all claims, including claims for damages, declaratory relief, and retrospective injunctive relief.  *See Will*; 491 U.S. at 71; *Green v. Mansour*, 474 U.S. 64, 73-74 (1985); *Pennhurst*, 465 U.S. at 100; *Edelman*, 415 U.S. at 662-63.

Here, Plaintiffs have sued employees and public officials of the State of Minnesota in their official capacities only.  Plaintiffs seek damages, declaratory, and injunctive relief.  Because claims against state officials in their official capacities are treated as claims against the state, the Eleventh Amendment bars Plaintiffs' claims against the State Defendants.

In *Ex Parte Young*, the Supreme Court recognized a limited exception to Eleventh Amendment immunity for claims seeking prospective injunctive relief to restrain state officials from enforcing a state law that violates federal law or the federal constitution.  209 U.S. 123, 156-57 (1908); *see also Green*, 474 U.S. at 68.  The exception does not apply to permit prospective injunctions seeking to force a state official to affirmatively exercise discretion to act; rather, it restrains the official from taking already-planned enforcement action that violates federal rights.  *Young*, 209 U.S. at 158-59.  To establish the applicability of the exception, a plaintiff must allege that: (1) the defendant is a state official who "ha[s] some connection with the enforcement" of the challenged statute, and (2) the defendant has

20

"threaten[ed] and [is] about to commence proceedings" to enforce the statute.  *Id*. at 156-57; *see also Minn. RFL Republican Farm Labor Caucus v. Freeman*, 33 F.4th 985, 992 (8th Cir. 2022).  The connection with enforcement may arise out of the general law or be specifically created by the act itself.  *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017). A general executive responsibility to take care that the laws are faithfully executed and tangential responsibilities with relation to a law are insufficient connections to enforcement to trigger the exception.  *Id.*  For a general legal authority to create sufficient connection to enforcement, the authority must give the government official a specific method for enforcement that applies to the law in question.  *Church v. Missouri*, 913 F.3d 736, 749 (8th Cir. 2019).

Plaintiffs' claims for prospective injunctive relief do not qualify for the *Ex Parte Young* exception.  Plaintiffs seek injunctions to stop the State Defendants from "implementing Minnesota's post-repeal abortion laws," which they define to include Minnesota Statutes Sections 145.409, 548.252, 604.415, and 629.02, and to stop enforcement of the repeal of the 2022 abortion laws.  (Compl. at ¶¶57, 71 Prayers for Relief (E)(1).).  As a threshold matter, Plaintiffs do not seek to enjoin state laws that actually violate federal law or the federal constitution.  While they allege that these laws violate the United States Constitution, they cannot establish these claims.  As explained in detail in Section V of this memorandum, Minnesota's statutes do not violate federal law or the federal constitution.  Minnesota simply followed what the Supreme Court authorized in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 300, 302 (2022), and allowed the

State legislative process to determine whether to involve the government in private abortions. Thus, Plaintiffs' do not seek to enjoin a state statute that actually violates federal law or the federal constitution.

Even if they did, Plaintiffs do not satisfy the two prongs of the *Ex Parte Young* test. With respect to the repeal of the 2022 statutes, the repeal of the laws did not create any enforcement obligations, it simply removed requirements from State law. Thus, there would be nothing to enjoin. For the post-repeal statutes, as explained below, the State Defendants either do not enforce the statutes in question or do not have plans to imminently enforce the statutes against Plaintiffs. Thus, the *Ex Parte Young* exception does not apply.

### A.    Sections 548.252 and 604.415

None of the State Defendants have authority to enforce Sections 548.252 or 604.415. Section 548.252 creates defenses that a defendant may raise in a court proceeding if sued for abortion-related activities and, as written, would be enforced only by Minnesota state courts. Minn. Stat. § 548.252 ("a court in this state shall not apply a law described in paragraph (a)…a court in this state shall not enforce or satisfy a civil judgment"). Section 604.415 creates a private right of action for citizens of Minnesota to impose penalties on people who sue for abortion-related activities and is not enforced by State officials. Minn. Stat. § 604.415 ("a person against whom a judgment is entered…may bring an action against the person who brought the action leading to the judgment…"). Thus, Plaintiffs cannot establish the first prong of the *Ex Parte Young* test for Sections 548.252 and 604.415. The State Defendants do not have authority to enforce the statutes. Because none

22

of the State Defendants have authority to enforce these statutes, the Plaintiffs also cannot establish the second prong, that the State Defendants plan to enforce the statutes against them.  Thus, the *Ex Parte Young* exception does not apply.

**B.    Section 145.409**

As stated above, Section 145.409 recognizes pregnant persons' rights to reproductive freedom.  The MDH and DHS Commissioners and Medical, Nursing, and Pharmacy Board Presidents do not have authority to enforce Section 145.409.  While Section 145.409 grants reproductive rights, it does not assign enforcement authority to the Commissioners or the Boards.  Minn. Stat. § 145.409.  It does not expressly assign enforcement authority to anyone and the Commissioners and Boards, as creatures of statute, do not have enforcement authority over a statute unless their enabling statutes give them that authority.  *See In re Hubbard*, 778 N.W.2d 313, 318 ("administrative agencies are creatures of statute and they have only those powers given to them by the legislature. An agency's statutory authority may be either expressly stated in the legislation or implied from the expressed powers").  If the statutory language leaves any uncertainty as to an agency's authority, courts resolve that uncertainty "against the exercise of such authority." *In re Valley Branch Watershed Dist.*, 781 N.W.2d 417, 422 (Minn. Ct. App. 2010).  The Commissioner and Board enabling statutes do not explicitly give them authority over Section 145.409.  *See* Minn. Stat. §§ 144.05, 147.01, 147.091, 148.181, 148.191,151.02-.06. 256.01.

It is possible that the Attorney General and Governor may have authority to enforce Section 145.409 under their general powers, but the legislature did not explicitly grant that power. Even assuming they have such power, Plaintiffs fail to meet the requirement of the second *Ex Parte Young* prong, that enforcement against them is imminent. Plaintiffs do not allege that they, as a matter of practice, violate any person's right to reproductive freedom. The individually-named plaintiffs who had abortions are in no position to violate others' rights and have not expressed an intent to do so. Plaintiff PHCs and their directors do not allege that they have the ability to prevent people who want to have abortions from having abortions. In fact, they allege that they do not have that ability. (Compl. ¶362.) Therefore, they have not alleged that they are engaging, or intend to engage, in conduct that would violate Section 145.409. They cannot establish the second prong of the *Ex Parte Young* test, imminent enforcement against them.

### C.    Section 629.02

Section 629.02 prohibits the Governor from arresting or extraditing to other states any person for acts committed in Minnesota involving the termination of a pregnancy. Minn. Stat. § 629.02. None of the State Defendants other than the Governor are implicated by this statute. Thus, Plaintiffs cannot meet the first prong of the *Ex Parte Young* test for any State Defendant except Governor Walz.

Plaintiffs also fail to meet the requirement of the second *Ex Parte Young* prong with regard to Governor Walz, that enforcement against them is imminent. Plaintiffs have not identified any imminent plan by the Governor to implement Section 629.02 against them

24

as they do not extradite criminals and are not subject to extradition. They also have not identified any person at all subject to this Section who another state has sought to have extradited. Thus, enforcement of the Statute is not imminent and the *Ex Parte Young* exception does not apply to Plaintiffs' claim seeking to enjoin enforcement of Section 629.02.

Because Plaintiffs have not met both prongs of the *Ex Parte Young* test for their claims seeking to prospectively enjoin enforcement of Minnesota Statutes Sections 145.409, 548.252, 604.415, and 629.02, the exception does not apply to those claims, and the Eleventh Amendment bars them.

### D.    Affirmative Injunctive Relief

In addition to seeking injunctions against enforcement of Minnesota statutes, the Plaintiffs request injunctions that, essentially seek to force the State to legislate to regulate abortions. Specifically, they ask the Court to order the State Defendants to "stop delegating to abortion facilities…the taking of waivers of pregnant mothers' constitutional rights." (Compl. at Prayers for Relief (E)(2).) The Plaintiffs also ask the Court to order the State Defendants to "stop delegating to abortion facilities" the termination of a pregnancy and "to stop the termination" of a pregnancy without first conducting a full court hearing. (*Id.* at (E)(3)-(4).) In plain English, Plaintiffs want the Court to order the State to pass laws or regulations either fully restricting abortions or requiring court proceedings before a person's consent to an abortion is deemed valid. *Ex Parte Young*'s exception is designed to permit injunctions to stop state officials from taking action that violates federal rights,

25

not to force state officials to take affirmative action. *Young*, 209 U.S. at 158-59. Thus, the type of injunction Plaintiffs seek is not the type of injunction permitted by *Ex Parte Young*. Even if it were, the named State Defendants do not have the authority to take the action Plaintiffs seek. Of the seven named State Defendants, only Governor Walz has a role in the legislative process, and he does not have authority to act unilaterally to pass the types of legislation the Plaintiffs want passed. Further, this type of legislation would violate Minnesota's constitution. *See Gomez*, 542 N.W.2d at 27; *Doe*, 2022 WL 2662998 at *1. Thus, these claims do not fall under the *Ex Parte Young* exception.

Because none of Plaintiffs' claims fall under the *Ex Parte Young* exception, Plaintiffs' claims are barred by the Eleventh Amendment and the Court must dismiss them.

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER SECTION 1983.

It is black letter law an officer acting in their official capacity is not a "person" subject to suit under Section 1983. *Will*, 491 U.S. at 71; *Calzone*, 866 F.3d at 872. Here, the Plaintiffs have sued the State Defendants only in their official capacities. Because official capacity claims do not implicate "persons" under Section 1983, Plaintiffs fail to state a claim for relief.[6]

---

[6] If Plaintiffs had included individual capacity claims against the State Defendants, their claims would still fail because the State Defendants were not personally involved in the conduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (rejecting Section 1983 claims based on *respondeat superior*). Further, because Plaintiffs' theories are novel and there is no clearly established law supporting their theories, the State Defendants would be entitled to qualified immunity. *See Beck v. Wilson*, 377 F.3d 884, 889 (8th Cir. 2004).

Even if the Plaintiffs had properly pleaded capacity, their claims would fail because they did not allege sufficient state action to trigger Section 1983. Under Section 1983, Plaintiffs must allege that they were injured by someone acting "under color of state law." *Sabri v. Whittier All.*, 833 F.3d 995, 1000 (8th Cir. 2016). The Supreme Court has consistently recognized a dichotomy between public and private acts for purposes of Section 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 53 (1999). Private acts are not subject to constitutional review. *Hoyt v. St. Mary's Rehab. Ctr.*, 711 F.2d 864, 866-67 (8th Cir. 1983). A state's mere approval of or acquiescence in the initiatives of a private party does not amount to state action. *Sabri*, 833 F.3d at 1000. Neither does state funding of private activity. *Id.*, *see also Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814 (2019). State regulation also does not convert private activity into state activity even if the regulation is extensive and detailed. *Sabri*, 833 F.3d at 1000; *see also Calgaro v. St. Louis Cnty*, 919 F.3d 1054, 1059 (8th Cir. 2019) (state statutes regarding consent did not transform medical provider into state actor).

A private actor is only considered a state actor under Section 1983 when (i) the government compels the private actor to take a particular action, (ii) the government acts jointly with the private actor, or (iii) the private actor performs a traditional exclusive public function. *Manhattan*, 587 U.S. at 809. Here, nothing in Minnesota's statutory scheme compels clinics to provide abortions or women to have them. Thus, Plaintiffs cannot meet the state action requirement through compelled action.

27

Plaintiffs argue that the State has jointly advocated with Planned Parenthood for a woman's right to choose. Even if this is true, Plaintiffs' alleged injuries do not derive from recognition of this right. They derive from women allegedly obtaining abortions without adequate consent, due to alleged coercion from third parties. Constitutional protections may only be invoked when the State is responsible for the specific conduct of which the plaintiff complains. *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). Because there is no allegation that the State and clinics work together to obtain informed consent or perform abortion procedures without informed consent, Plaintiffs do not meet the state action requirement through this method either.

Plaintiffs allege that the State funds clinics that provide abortions through payments from MinnesotaCare and similar programs. It is well-established that such payments do not establish joint state action. *See id.* at 1005 (payment of Medicaid benefits did not constitute state action); *Alexander v. Pathfinder, Inc.*, 189 F.3d 735, 740 (8th Cir. 1999).

Plaintiffs also argue that the State has delegated the traditional exclusive function of "obtaining a waiver" of the right to reproduce.[7] In reality, the transaction they are concerned about is informed consent for a medical treatment or procedure. For this method of state action to apply, the State must have *exclusively* performed the function.

---

[7] While Plaintiffs claim that Minnesota has "delegated" various responsibilities to private abortion clinics, the only facts they allege to support this claimed "delegation" are the absence of statutes providing the requirements they want enshrined in law. Failure to pass statutes does not constitute "delegation." It is not action at all.

28

*Manhattan*, 587 U.S. at 809. State Defendants are not clinics or hospitals, and they do not play any role in obtaining informed consent from patients prior to medical treatments or procedures. Even if the Court accepts Plaintiffs' novel characterization as obtaining a waiver of a right to reproduce, the State has not exclusively performed this function. People make choices about reproduction every day without state involvement. People try to get pregnant, carry pregnancies to term, obtain birth control from their doctors, buy and use condoms, and abstain from sex to avoid unwanted pregnancies. The State does not review or mandate these decisions. Thus, the State does not exclusively approve citizens' reproductive decisions and Plaintiffs cannot meet the state action requirement through this allegation.

The State has chosen not to intervene in a person's private decisions about whether to carry a pregnancy to term. A state's legislative decision not to intervene in private matters does not establish state action under Section 1983. *Am. Mfrs.*, 526 U.S. at 53-54 (holding that state decision to stop prohibiting insurers from withholding payment for disputed medical services allowed a private choice and did not constitute state action). This is true even where, as here, the State previously regulated the private matter at issue and has chosen to no longer do so. *Id.* The Supreme Court does not tolerate the imposition of constitutional restraints on private action by the "simple device of characterizing the State's inaction as 'authorization' or 'encouragement.'" *Id.* Because the State's choice is to step out of the picture and allow women and their doctors to make their own choices, there can be no state action here.

29

Because Plaintiffs cannot state a claim against the State Defendants in their official capacities under Section 1983 and because Plaintiffs have not alleged State action, Plaintiffs fail to state a claim for relief under Section 1983 and the Court should dismiss their claims.

## IV.    THE GOVERNOR HAS LEGISLATIVE IMMUNITY AGAINST PLAINTIFFS' CLAIMS BASED ON BILLS PASSED.

State officials who perform legislative acts are entitled to immunity from liability for their legislative acts. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998); *Church*, 913 F.3d at 751. A governor's acts of advocating for, signing, or vetoing a bill constitute legislative acts subject to immunity. *Baraka v. McGreevey*, 481 F.3d 187, 197 (3rd Cir. 2007); *Torres Rivera v. Calderon Serra*, 412 F.3d 205, 212 (1st Cir. 2005); *see also Smiley v. Holm*, 285 U.S. 355, 372-73 (1932) (recognizing a governor's signing or vetoing a bill is part of the legislative process). Legislative immunity applies to both suits for damages and suits for equitable relief. *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731-34 (1980); *Church*, 913 F.3d at 752. Legislative immunity, however, does not preclude a suit based on an official's enforcement authority. *Church*, 913 F.3d at 753. But, where alleged enforcement authority is not sufficient to satisfy the requirements of the *Ex Parte Young* exception, and the sole basis remaining for the claim is a challenge to legislative actions, legislative immunity will bar suit. *Id*.

Here, Plaintiffs challenge Governor Walz's actions of signing the repeal of the prior abortion-related laws and of advocating for and signing the PRO Act into law in 2023. As

discussed above, the *Ex Parte Young* exception does not apply to any claims for injunctive relief because Governor Walz does not have authority to enforce the statutes Plaintiffs challenge or has no plans to imminently enforce them against Plaintiffs. Plaintiffs' only remaining claim against Walz, therefore, is a claim based on his legislative acts, including statements he made advocating for those acts. Walz is entitled to legislative immunity for those acts and the claims against him must be dismissed.

## V.    PLAINTIFFS' CLAIMS FAIL ON THE MERITS.

Plaintiffs allege claims under the Fourteenth Amendment of the United States Constitution: deprivation of fundamental rights under the substantive component of the Amendment's Due Process Clause, denial of procedural due process, denial of equal protection under the Amendment's Equal Protection Clause, and violation of their right to free speech under the First Amendment as incorporated against the states through the Fourteenth. If the Court determines that the jurisdictional and procedural arguments stated above preclude Plaintiffs' claims, it need not reach the merits of those claims. Even if it does reach the merits, Plaintiffs' claims still fail.

### A.    Plaintiffs' Claims Under the Due Process Clause Fail.

The Fourteenth Amendment states that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. The Amendment contains a procedural component and a substantive component. *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). Procedural due process concerns the minimum procedures that are required before the government can deprive an individual of a liberty

or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972). Substantive due process claims challenge government regulations that infringe upon fundamental rights or challenge executive actions that shock the conscience. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998); *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). Here, Plaintiffs have alleged that the State's regulatory scheme both violates their fundamental rights and deprives them of procedural due process. Because Plaintiffs cannot succeed on either type of claim, the Court should dismiss their claims.

### 1.    The State Defendants Have Not Violated Plaintiffs' Fundamental Rights Under the Substantive Component of the Due Process Clause.

Claims One through Three allege violations of Plaintiffs' fundamental rights under the Due Process Clause. (Compl. ¶¶380-88.) To state a claim, an individual raising a substantive claim under the due process clause must allege that legislative action burdens the individual's fundamental rights. *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017); *see also Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006). Fundamental rights include rights enumerated in the Bill of Rights and "certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015). The Supreme Court recognizes fundamental rights that arise from the need for privacy with respect to matters of family life including the right to marry, the right to use contraception, the right to procreate, and rights related to family relationships and childrearing. *Id.* at 666-

32

68; *see also Washington*, 521 U.S. at 720 (listing recognized fundamental rights). The Court has recognized that such rights are inherent in the concept of individual autonomy. *Obergefell*, 576 U.S. at 665. If a statute infringes a fundamental right, it must be narrowly tailored to serve a compelling governmental interest. *Reno v. Flores*, 507 U.S. 292, 302 (1993).

While Plaintiffs here have identified fundamental rights that have been recognized by the Supreme Court, including the right to procreate, Plaintiffs have not identified state legislation that infringes those rights. In fact, Section 145.409 explicitly recognizes the right to procreate, stating that every person who becomes pregnant has a fundamental right to continue their pregnancy and give birth.

The other statutes Plaintiffs challenge also do not implicate fundamental rights. As noted above, Sections 548.252, 604.415, and 629.02 provide protections for abortion patients or abortion providers. These protections do not prevent people who want to procreate and raise children from doing so. Rather, they prevent people from bringing lawsuits or seeking criminal charges against people who have or provide abortions. There is no fundamental right to sue or to have someone arrested or criminally charged. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768 (2005) ("the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause"); *Parham v. Hughes*, 441 U.S. 347, 358 n.12 (1979) ("it cannot seriously be argued that a statutory entitlement to sue for the wrongful death of another is itself a 'fundamental' or constitutional right"); *Alexander v. Whitman*,

114 F.3d 1392, 1404-1405 (3rd Cir. 1997) (rejecting claim that mother of stillborn baby had fundamental right to bring a wrongful death action to recover based on the loss). Thus, Plaintiffs have not established that the statutes in question violate their fundamental rights.

What Plaintiffs really challenge is Minnesota's decision *not* to involve state government in the abortion process that occurs between a woman, her family, her domestic partner, and her medical provider. They seek to force Minnesota to legislate to protect their rights from hypothetical family members or domestic partners who allegedly would coerce them to have abortions or hypothetical medical providers who allegedly would not obtain appropriate informed consent.[8]

The Due Process Clause, however, does not require states to take affirmative steps to protect fundamental rights from the actions of private parties. *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195-196 (1989) ("nothing in the language of

---

[8] The State Defendants have no reason to believe that the abortion clinics here did not obtain informed consent. To the extent that Plaintiffs assert that hypothetical medical providers could perform abortions without consent or that hypothetical third parties could threaten pregnant people, people who experience such actions have alternative means to obtain relief. Minnesota common law creates a cause of action against providers who do not obtain informed consent before performing medical procedures. *See Pratt by Pratt v. Univ. of Minn. Affiliated Hosp. and Clinics*, 414 N.W.2d 399, 401 (Minn. 1987) (explaining requirements for negligent nondisclosure claims); *Kohoutek v. Hafner*, 383 N.W.2d 295, 299 (Minn. 1986) (comparing negligent nondisclosure and medical battery). To the extent that Plaintiffs claim that third parties threaten or coerce women, such women could have legal recourse against those individuals through state tort law. *See Johnson v. Morris*, 453 N.W.2d 31, 41 (1990) (discussing requirements for intentional infliction of emotional distress claim); *Elwood v. Cnty. of Rice*, 423 N.W.2d 671, 679 (Minn. 1988) (discussing the tort of assault).

34

the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors"); *see also Collins*, 503 U.S. at 126-28; *Carlton v. Cleburne Cnty., Arkansas*, 93 F.3d 505, 508 (8th Cir. 1996); *Marie v. McGreevey*, 314 F.3d 136, 143 (3rd Cir. 2002) (holding that the Constitution did not require the state to mandate plaintiffs' heightened consent requirements prior to abortions).

In *DeShaney*, the United States Supreme Court explained that neither the text of the Fourteenth Amendment nor the history and purpose of the Clause require a state to take affirmative action to protect fundamental rights. 489 U.S. at 191. Regarding the text of the amendment, the Court stated,

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.* With regard to the history and purpose of the Clause, the Court noted that the Clause was intended "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. The Court explained that the Framers intended to leave the extent of governmental obligation in the latter area to the democratic process. *Id.*

Thus, states cannot be held liable under the substantive component of the Due Process Clause for failing to take affirmative steps to protect fundamental rights from non-government intrusions. Because Plaintiffs seek to hold Minnesota liable for failing to

legislate to protect their rights from the alleged actions of family members and private abortion clinics, Plaintiffs' fundamental rights claim asserted on that basis fails.

Because Plaintiffs have not identified a Minnesota statute or state action that infringes on their fundamental rights to procreate and raise children and because Plaintiffs cannot use the Due Process Clause to force Minnesota to pass legislation to protect their fundamental rights, Plaintiffs' substantive due process fundamental rights claim fails and must be dismissed.

> **2.    Plaintiffs Fail to State a Claim for Violation of Procedural Due Process.**

Plaintiffs also assert a procedural due process claim, alleging that Minnesota statutes violate pregnant people's procedural due process rights because they do not require that all pregnant persons have a court proceeding and hearing before a judge to ensure that they are knowingly consenting to an abortion. (Compl. ¶¶ 422-26.)  Procedural due process questions are examined in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, and the second examines whether the procedures utilized were constitutionally sufficient. *Ky. Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

Plaintiffs' procedural due process claim fails at the first step because no State Defendants (or any state actors) were involved in the Individual Plaintiffs' abortions or other abortions performed in the state of Minnesota.  In fact, Minnesota statutes specifically recognize the fundamental right of pregnant people to make decisions about their

pregnancies *without* government interference.  *See* Minn. Stat. § 145.509.  Accordingly, Plaintiffs' procedural due process claim fails.

### B.    Plaintiffs Cannot State a Claim Under the Equal Protection Clause.

In Claims Four through Eight and Ten, Plaintiffs allege that the State Defendants have violated the Equal Protection Clause because Minnesota statutes governing termination of parental rights, adoption, and termination of pregnancy by minors require notice, waiting periods, or court intervention before action is taken and Minnesota has not passed a similar law requiring court intervention before termination of a pregnancy by an adult.  (Compl. ¶¶395-421); Minn. Stat. § 144.343 (requiring notice of minor's proposed abortion to parents 48 hours in advance or, if no notice is provided, a court hearing and judicial order); Minn. Stat. §§ 259.22-.24 (creating petition, consent, and court proceeding for adoptions); Minn. Stat. §§ 260C.301, .307 (establishing procedures for termination of parental rights).  They also allege that Minnesota's statute that exempts abortion providers from its statute governing murder of an unborn child violates the Clause.  (Compl. ¶¶ 389-394, 427-432); Minn. Stat. §§ 609.266-.2661, 609.269.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Clause creates no substantive rights and instead "embodies a general rule that states should treat like cases alike but may treat unlike cases accordingly."  *Vacco v. Quill*, 521 U.S. 793, 799

(1997).   Generally, laws that apply evenhandedly to all without drawing distinctions between persons unquestionably comply with the Clause.  *Id*. at 800.  Plaintiffs' Equal Protection claim fails because they have not alleged state action and they are not similarly situated to the subjects of the statutes they challenge.

### 1.    Plaintiffs' Equal Protection Claim Fails for Lack of State Action.

There must be state action to trigger the Equal Protection Clause's protections.  *See Med. Inst. of Minn. v. Nat'l Ass'n of Trade & Tech. Sch.*, 817 F.2d 1310, 1312 (8th Cir. 1987); *Planned Parenthood Minn., N.D., S.D. v. Noem*, 556 F. Supp. 3d. 1017, 1026-27 (D.S.D. 2021).   Here, Plaintiffs' Equal Protection challenge based on Minnesota's termination of parental rights, adoption, and abortion for minors statutes fails because Plaintiffs are, once again, seeking to require the State to pass legislation rather than challenging an existing law or existing state action.

Plaintiffs do not allege that the termination of parental rights, adoption, minor abortion, and murder statutes are unconstitutional or invidiously discriminate.  They are not seeking to have these laws overturned.  Rather, they are seeking to force Minnesota to create similar statutory regimes for adults seeking abortions and to pass statutes recognizing abortion as murder.  Like the Due Process Clause, the Equal Protection Clause is not designed to hold states liable for failing to act.  Rather, its purpose is to prohibit states from passing legislation that discriminates against similarly situated persons for no rational purpose.  There is no state action in a private adult abortion, like the ones experienced by

the individual plaintiffs, so there can be no Equal Protection claim here. *See Noem*, 556 F. Supp. 3d. at 1026-27.

### 2.    Plaintiffs Are Not Treated Differently Than Similarly Situated Persons.

Even if Plaintiffs had sufficiently alleged state action, their claim would fail because they have not demonstrated that they were treated differently than similarly situated persons.  Where state action is present, the first step in an Equal Protection analysis is to determine whether the plaintiff has demonstrated that they were treated less favorably than those who were similarly situated to them.  *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018); *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006); *see also Clements v. Fashing*, 457 U.S. 957, 967 (1982) ("it is the claimant's burden to demonstrate in the first instance a discrimination against him of some substance").  The plaintiff and their comparator must be similarly situated in all relevant respects.  *Plaintiff A v. Park Hill Sch. Dist.*, 97 F.4th 586, 592 (8th Cir. 2024).  Dissimilar treatment of dissimilarly situated persons does not violate the Equal Protection Clause.  *Kemp*, 894 F.3d at 909.  Thus, absent this threshold showing, plaintiffs do not have a viable Equal Protection claim.  *Id.*

Plaintiffs' claim fails because Plaintiffs are not similarly situated to the persons subject to the statutes in question.  First, Plaintiff PHCs and their directors are organizations and do not have parental rights implicated by these statutes.  Thus, they are not similarly situated to the individuals governed by the statutes.

39

Second, the individually-named Plaintiffs and currently pregnant persons are not similarly situated to persons covered by the termination of parental rights and adoption statutes. Plaintiffs' counsel raised identical arguments in *Planned Parenthood Minn., N.D., S.D. v. Noem*, when moving to dissolve a preliminary injunction against a South Dakota abortion law. 556 F. Supp. 3d. at 1026-27. They argued that South Dakota was legally obligated, under the Equal Protection Clause, to force women who choose to have an abortion to first obtain a court order authorizing the procedure. *Id.* In rejecting these theories, the district court concluded—as germane here—that:

> [T]he rights terminated in an adoption proceeding are terminated by the State through a court order. Unlike in a court-ordered adoption proceeding, the State does not terminate parental rights in an abortion. While those who are similarly situated must be treated alike, a woman whose parental rights are being terminated by state action is not similarly situated to one who chooses to terminate those rights via abortion of an unborn child at a private clinic. Thus, the court finds PHC intervenors unlikely to succeed on the merits of their equal protection claim.

*Id.* Thus, Plaintiffs are not similarly situated to parents protected by the termination of parental rights and adoption statutes.

The individually-named Plaintiffs and other adult abortion patients also are not similarly situated to minor abortion patients under the minor abortion statute because they are adults, not minors. Notably, the sections of the Minnesota minor abortion statute that Plaintiffs want extended to pregnant adults relating to waiting periods, notice, and court proceedings were held unconstitutional in *Doe v. State*. No. 62-CV-19-3868, 2022 WL 2662998 at *1 (Minn. Dist. Ct. July 11, 2022) (invalidating Minn. Stat. § 144.343, subd.

2-6). Thus, the State cannot extend those sections to pregnant adults and it is not enforcing them against minors. Minors and adults are treated the same. Even if the statute were not unconstitutional, pregnant adults are not similarly situated to minors. Minors' bodies and brains are still developing, and they do not share the complete legal decision-making rights of adults.

Neither are the Plaintiffs similarly situated to individuals subject to Minn. Stat. §§ 609.2661 & 609.269. Minnesota's murder of an unborn child statutes apply to people who murder unborn children. *See* Minn. Stat. § 609.2661. But the statutes exclude persons who provide reproductive healthcare to furnish the termination of a pregnancy with the consent of the pregnant person. Minn. Stat. § 609.269. Plaintiffs are neither murderers nor healthcare providers who furnish abortions. Thus, they are not similarly situated for purposes of their Equal Protection claim and their claim must fail.

Because the Plaintiffs have not alleged state action and they are not being treated differently than similarly situated persons their Equal Protection claim fails.

### C.    Plaintiff PHCs and NIFLA's First Amendment Claim Fails.

Finally, in Claim Eleven, Plaintiff PHCs and NIFLA assert a violation of their "right to the freedom of speech." (Compl. ¶¶436 & 439.) The specific contours of this First Amendment claim are unclear, but it appears they claim that the Attorney General's consumer alert about Crisis Pregnancy Centers ("CPCs") had a chilling effect on their ability to communicate their mission of counseling pregnant people against abortions. (Compl. ¶¶435 & 436.) Plaintiffs fail to state a First Amendment claim for several reasons.

41

First, government criticism of a private entity is permissible government speech that does not implicate the First Amendment. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City, UT v. Summum*, 555 U.S. 460, 467 (2009). The government has the right to "say what it wishes" and "select the views it wants to express" without First Amendment scrutiny. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). The Consumer alert warned that some CPCs "may pose as reproductive healthcare clinics despite not providing comprehensive reproductive healthcare to consumers" and advised pregnant people to "do their homework before scheduling an appointment with a clinic, center, or provider." (Jacot Dec. Ex. 2.) Notably, neither Plaintiff PHCs nor NIFLA were mentioned by name. (*Id.*) The Attorney General was well within the bounds of the First Amendment when he issued this consumer alert. *See also Matal v. Tam*, 582 U.S. 218, 234 ("when a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others," and thus does not need to "maintain viewpoint-neutrality when its officers and employees speak about the venture.").

Second, Plaintiffs have also failed to adequately plead a First Amendment chilling/coercion claim, i.e. a government official using coercive threats or actions to suppress or punish disfavored speech. *See*, *e.g. Vullo*, 602 U.S. at 187 (stating that while a government official "can share his views freely and criticize particular beliefs," he cannot "use the power of the State to punish or suppress disfavored expression"). To state such a claim, "a plaintiff must plausibly allege conduct that, viewed in context, could be

reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff 's speech." *Vullo*, 602 U.S. at 191.

Here, Plaintiffs cite no facts that would support a plausible threat of adverse government action. There are no allegations that any complaints have been made about them or that they are being investigated.  Nor would the Minnesota Attorney General or any other State Defendants have regulatory authority over NIFLA, headquartered in Virginia, Dakota Hope, located in North Dakota, or Billings, who practices in North Dakota. (Compl. ¶¶22, 26, & 27.)

Plaintiffs take issue with the request in the consumer alert for people to "lodge complaints" against PHCs. (Compl. ¶439.) Specifically, the consumer alert requests that if a person has "information or concerns about any CPC that may be providing deceptive or inaccurate information" to contact the Attorney General. (Jacot Dec. Ex. 2.)  Plaintiffs do not allege that they are engaging in deceptive practices or that the Attorney General accused them of engaging in deceptive practices.  Moreover, Government officials request complaints from the public on all sorts of issues.  The Attorney General's website solicits complaints from the public about landlords, wage theft, nonprofits and charities, anticompetitive activity, and other consumer protection issues.[9]  The websites for the Medical Board, Nursing Board, and Pharmacy Board provide mechanisms for members of the public to submit complaints about licensed health professionals practicing in

---

[9] *See*, *e.g.*, Jacot Dec. Ex. 3.

Minnesota.[10]  *See* Minn. Stat. § 214.103.  Therefore, a general request from the public, where none of the Plaintiffs are specifically mentioned, cannot be reasonably interpreted as a threat of government action against Plaintiffs. *Compare Vullo*, 602 U.S. at 186-187 (advising entities to "take prompt action" to manage risks arising from business with NRA after DFS superintendent told entities under investigation that she would be "less interested" in pursuing their infractions if they cut ties with NRA).

"A government entity has the right to 'speak for itself'" and to "select the views that it wants to express." *Pleasant Grove*, 55 U.S. at 467.  Plaintiffs may disagree with the Attorney General's warnings about CPCs, and they are free to do so. But this disagreement does not constitute an infringement on their First Amendment rights.

## VI.    PLAINTIFFS' REQUEST FOR A DECLARATION THAT REPEALED LAWS ARE UNCONSTITUTIONAL IS MOOT.

Pending claims for declaratory and injunctive relief become moot when the challenged conduct ceases and there is no reasonable expectation that the wrong will be repeated. *Missouri Prot. and Advocacy Serv., Inc. v. Carnahan*, 499 F.3d 803, 811 (8th Cir. 2007); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (applying mootness to declaratory relief).  Here, Plaintiffs seek a declaratory judgment that Minnesota's repealed abortion laws are unconstitutional.  Because those laws were repealed and are no longer in effect, Plaintiffs' request for declaratory relief is moot.  Because the repeal occurred in

---

[10] *See* Jacot Dec. Exs. 4-6.

response to a court decision declaring the laws unconstitutional under Minnesota's Constitution, no exception to the mootness doctrine applies. *See Doe*, 2022 WL 2662998, at *1 (declaring now-repealed laws unconstitutional); *Missouri*, 499 F.3d at 811 (change made to comply with law not voluntary cessation for purposes of mootness analysis).

## VII. PLAINTIFFS HAVE NOT COMPLIED WITH THE PLEADING REQUIREMENTS OF RULE 8.

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Michaelis v. Nebraska State Bar Ass'n*, 717 F.2d 437, 438 (8th Cir. 1983). Each allegation in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

A complaint must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and, if so, what the claim is. *Vicom, Inc. v. Harbridge Merch. Serv.*, 20 F.3d 771, 775 (7th Cir. 1993). It is the plaintiff's burden to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them. *Gurman v. Metro. Hous. And Redev. Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) (noting that the plaintiffs had "essentially coughed up an unsightly hairball of factual and legal allegations, stepped aside, and invited the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two"). Complaints that are confused and sprawling place an unjustified burden on the responding party. *Iverson v. City of Brooklyn*

45

*Ctr.*, No. 23-CV-917, 2024 WL 3178041 at * 1 (D. Minn. March 11, 2024), *aff'd*, No. 24-2691, 2024 WL 5415776 (8th Cir. Oct. 16, 2024).

Plaintiffs' complaint is 241 pages long.  Of the 443 total paragraphs, it refers to the State Defendants in only 73 paragraphs.  The majority of the complaint contains lengthy recitations of irrelevant events that occurred outside Minnesota under other states' laws by people (often unidentified) who do not live in Minnesota.  *See*, *e.g.*, (Compl. ¶¶93-101, 108-25, 141-44, 134-38, 141-44, 146-49 (abortion performed in Iowa), 150-61, 168-71 (abortion performed in South Dakota), 162-67 (abortion in South Dakota 19 years ago), 172-80 (abortion sought seven years ago), 184-87, 191-93, 201-03, 240, 335, 342, 350-52 (litigation/discussion about North and South Dakota laws), 225-27, 244-46 (random non-plaintiff women's stories), 248-67, 269-71, 276-83, 288-312 (about conditions at clinics in other states)); *see also McAninch v. Wintermute*, 491 F.3d 759, 766 (8th Cir. 2007) (concluding that complaint that contained "lengthy, irrelevant, and largely incomprehensible factual allegations" violated Rule 8).  Many of the events alleged occurred outside the six-year statute of limitations for Section 1983 claims.  *See Egerdahl v. Hibbing Cmty Coll.*, 72 F.3d 615, 618 n.3 (8th Cir. 1995) (recognizing six-year Section 1983 statute of limitations in Minnesota).  Some occurred decades ago.

Plaintiffs' complaint, therefore, does not comply with Rule 8's requirement that a complaint be "simple, concise, and direct."  Courts have held that complaints shorter than the present complaint did not comply with Rule 8's requirements.  *See Cody v. Loen*, No. 11-2450, 468 Appx. 644, 645 (8th Cir. 2012) (affirming dismissal of 75-page

complaint); *Larson v. Stow*, No. 94-1563, 36 F.3d 1100 at *1 (8th Cir. Sept. 20, 1994) (upholding dismissal of 70-page complaint); *Michaelis*, 717 F.2d at 439 (upholding dismissal of 144-page complaint); *Ellis*, 2012 WL 6652885 at *2 (182-page complaint violated Rule 8); *Gurman*, 842 F. Supp. 2d at 1153 (dismissing 60-page complaint). Because Plaintiffs' Complaint does not comply with Rule 8, the Court should dismiss the Complaint. If the Court declines to dismiss the Complaint, the Court should order Plaintiffs to file an Amended Complaint that complies with Rule 8.

## CONCLUSION

Plaintiffs' complaint is an improper attempt to legislate through litigation by seeking to impose additional restrictions on access to abortion in the State of Minnesota. But the Minnesota legislature has spoken, and its decision must be respected. *See Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 300, 302 (2022). If Plaintiffs want to change the statutory scheme, their remedy is through the legislative process—not the courts. For the foregoing reasons, the Court should grant the State Defendants' motion and dismiss all claims against the State Defendants with prejudice.

Dated: March 21, 2025                    Respectfully submitted,

                                         KEITH ELLISON
                                         Attorney General
                                         State of Minnesota


                                         s/ Margaret Jacot
                                         MARGARET JACOT (0346755)
                                         JEFF TIMMERMAN (0352561)

ANNA VEIT-CARTER (0392518)

Assistant Attorneys General
445 Minnesota Street, Suite 600
St. Paul, MN 55101-2131
(651) 300-7629 (Voice)
(651) 282-5832 (Fax)
Margaret.Jacot@ag.state.mn.us
Jeffrey.Timmerman@ag.state.mn.us
Anna.Veit-Carter@ag.state.mn.us

ATTORNEYS FOR STATE DEFENDANTS

|#5948952-v3